|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |
| 6 |   |
| 7 |   |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANTHONY T. WINSTON,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | No.  1:23-cv-01086-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION AND DENIAL OF PLAINTIFF'S MOTION TO AMEND AS MOOT<br><br>(ECF Nos. 5, 10) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to Bivens v. Six Unknown Federal Narcotic Agents, 403 U.S. 388 (1971).

Plaintiff filed the instant action July 20, 2023. (ECF No. 1.)  Before the Court could screen Plaintiff's complaint, he filed an amended complaint on August 4, 2023.  (ECF No. 5.)  On August 22, 2023, Plaintiff filed a motion to amend the complaint to add an additional Defendant. (ECF No. 10.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court  must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or

1 that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

2 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

3     A complaint must contain "a short and plain statement of the claim showing that the

4 pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

5 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

6 conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

7 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate

8 that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v.

9 Williams, 297 F.3d 930, 934 (9th Cir. 2002).

10     Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

11 liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

12 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be

13 facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

14 that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss

15 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant

16 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

17 liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d

18 at 969.

19 **II.**

20 **COMPLAINT ALLEGATIONS**

21     Plaintiff names Warden B.M. Trate, Captain Brasfield, Unit Officer Armador, and Unit

22 Manager Dwine, as Defendants.

23     On June 13, 2023, at 6:00 a.m., the prison administration under the direction of Warden

24 Trate and Captain Brasfield, began removing prisoners from Unit 5-A and placing them in 5-B to

25 conduct a search of the unit.  When the officers made it to Plaintiff's cell at approximately 6:25

26 a.m. they suspiciously removed Plaintiff's cell partner from the cell and an unknown officer

27 planted a knife and charged Plaintiff for it.  Instead of allowing Plaintiff to pack his personal to be

28 placed in the segregated housing unit, they put Plaintiff in a cell with his cell partner until the

search was completed.  After the search, Plaintiff was taken to the segregated housing unit.

Prison officials knew or should have known that Plaintiff was acting pro se in several cases and needed to maintain his legal materials.  However, when notified of pending deadlines, Unit Manager Dwine.

Officer Armador was working the unit on June 13, 2023 and received Plaintiff's property on that day, while Plaintiff was still in the segregated housing unit and the unit was on lockdown.  A couple weeks later, Plaintiff was released from the segregated housing unit and was told by property officer Hansen that he never received Plaintiff's property.  Because Plaintiff had several deadlines with the Court, he reached out to Captain Brasfield and requested a memo showing that his property was lost of unretrievable to excuse the deadline and gain an extension, but he refused.

Plaintiff spoke with Warden Trate about the issue on several occasions asking for his help to no avail.

## III.
## DISCUSSION

Not all constitutional cases against federal officers for damages may proceed as Bivens claims. There is a two-part test to determine whether a Bivens action may proceed. Ziglar v. Abbasi, 582 U.S. 138-139 (2017).  To determine whether a Bivens claim is cognizable, a court first "ask[s] whether the case presents 'a new Bivens context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022) (quoting Ziglar v. Abbasi, 582 U.S. at 139).  That is, the Court must determine whether the claim presents a new context from the three cases the Supreme Court has allowed to proceed under Bivens: Bivens v. Six Unknown Federal Narcotic Agents, 403 U.S. 388 (1971); Davis v. Passman, 442 U.S. 228 (1979); and Carlson v. Green, 446 U.S. 14 (1980). If the answer is no, the claim may proceed. If the answer is yes, the court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens to the action. Abbasi, 582 U.S. at 136.

///

3

The Ninth Circuit has summarized those special factors as follows:

> the rank of the officer involved; whether <u>Bivens</u> is being used as a vehicle to alter an entity's policy; the burden on the government if such claims are recognized; whether litigation would reveal sensitive information; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternate avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors. But the most important question for us to examine is whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

<u>Lanuza v. Love</u>, 899 F.3d 1019, 1028 (9th Cir. 2018) (alterations, citations, and internal quotation marks omitted).

**A.     Access to the Courts/Deprivation of Property**

Plaintiff brings claims for denial of access to the courts and deprivation of his property without due process of law.  Plaintiff's claims are based on allegations that that prison officials improperly confiscated his property which resulted in denial of access to the courts.  Both of Plaintiff's claims arise in new contexts.

Both the existence of alternative remedial processes and other special factors counselling hesitation weigh against extending the Bivens remedy to Plaintiff's claims proposed in this case. First, federal prisoners have numerous alternative remedies available to them, including the Federal Tort Claims Act and the Bureau of Prison's administrative grievance process. <u>See</u> 28 U.S.C. §§ 1346(b)(1), 2674 (allowing an inmate to seek money damages for personal injuries and property claims arising out of a federal employee's negligence or wrongful conduct); 31 U.S.C. § 3724(a) (allowing the Attorney General to settle claims for personal injuries and damages or lost personal property caused by federal law enforcement); 28 C.F.R. § 542.10(a) (establishing administrative-grievance procedure for "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). The Ninth Circuit has recognized the adequacy of these alternative remedial schemes with regard to prisoners' First Amendment claims. <u>See</u> <u>Buenrostro v. Fajardo</u>, 770 F. App'x 807, 808 (9th Cir. 2019) (declining to extend <u>Bivens</u> remedy for a prisoner allegedly punished for pursuing grievances and litigation); <u>Vega v. United States</u>, 881

4

1   F.3d 1146, 1152-54 (9th Cir. 2018) (declining to extend Bivens remedy for a prisoner alleging his

2   access to the courts was cut off due to filing lawsuits).

3         The Supreme Court has never recognized a Bivens remedy under the First Amendment

4   and the Ninth Circuit has also refused to extend a Bivens remedy to a claim under the First

5   Amendment. Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) (citing Iqbal, 556 U.S. at 675;

6   Bush v. Lucas, 462 U.S. 367, 368 (1983)); Lee v. Matevousian, 2018 WL 5603593, at *3-4 (E.D.

7   Cal. Oct. 26, 2018) (declining to infer Bivens remedy for First Amendment retaliation and denial

8   of access to courts claims).  Since Ziglar v. Abbasi, the Ninth Circuit has declined to extend the

9   Bivens remedy to claims brought under the First Amendment. See Schwarz v. Meinberg, 761 F.

10  App'x 732, 734-35 (9th Cir. 2019) (finding denial of access to courts claim was a "new Bivens

11  context" and declining to extend private right of action).

12        The Supreme Court has recognized a Bivens remedy for gender-based employment

13  discrimination under Fifth Amendment due process. See Davis v. Passman, 99 S. Ct. 2264

14  (1979).  Here, Plaintiff's Fifth Amendment claim for deprivation of property alleges that prison

15  officials confiscated Plaintiff's personal property without providing due process. Accordingly,

16  Plaintiff's Fifth Amendment claim presents a new context from the prior Bivens cases. See

17  Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is

18  based on the same constitutional provision as a claim in a case in which a damages remedy was

19  previously recognized."); Schwarz v. Meinberg, 761 Fed. Appx. at 734-75 ("[W]hile Davis

20  recognized a Fifth Amendment due process claim for gender discrimination, [plaintiff's] due

21  process claim is a new context because it alleges national origin discrimination."); see also

22  Jackson v. McNeil, 2023 WL 3092302, at *1 (9th Cir. Apr. 26, 2023) ("[Plaintiff] claims that he

23  was deprived of property without adequate pre-deprivation notice, an argument he concedes

24  presents a new Bivens context.").

25        The Court now turns to whether issues concerning separation of powers and other "special

26  factors" counsel hesitation. The Court finds that there is at least one special factor indicating that

27  the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of

28  allowing damages actions to proceed.

     Here, the Bureau of Prisons' administrative remedy program provides an alternative remedial structure to address Plaintiff's claims regarding his confiscated property and lockdown conditions. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74, (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including ... grievances filed through the BOP's Administrative Remedy Program (ARP). See 28 CFR § 542.10 (2001) (explaining ARP as providing 'a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement')"); Egbert, 142 S. Ct. at 1806 ("In Malesko, we explained that Bivens relief was unavailable because federal prisoners could, among other options, file grievances through an Administrative Remedy Program.") (internal quotation marks omitted); Hoffman v. Preston, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) ("Hoffman's complaint alleges that a prison correctional officer intentionally created the risk that another prisoner would assault Hoffman by publicly labeling him as a snitch and offering prisoners rewards. The Supreme Court's decision in Egbert v. Boule precludes recognizing a Bivens remedy for these allegations. Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' Egbert, 142 S. Ct. at 1803, why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (alteration in original).

     Even if the Bureau of Prisons' administrative remedy program did not provide Plaintiff with complete relief, the question before the Court is not whether existing remedies provide complete relief. Egbert, 142 S. Ct. 1793, 1804. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." Id. (citations and internal quotation marks omitted). And, as discussed above, the existence of these alternative remedial structures is a rational reason why Congress has not authorized a damages remedy for Plaintiff's claims.

     Accordingly, there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed. As Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the

costs and benefits of allowing Bivens damages actions to proceed, Plaintiff has failed to state a cognizable claim. Since this is a deficiency that cannot be cured by amendment, the Court concludes that granting leave to amend would be futile. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation omitted). In addition, Plaintiff's motion for leave to further amend the complaint to add an additional Defendant is moot. (ECF No. 10.)

### IV.
### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant action be dismissed for failure to state a cognizable claim for relief;
2. Plaintiff's motion to amend the complaint to add an additional Defendant be denied as moot; and
3. The Clerk of Court be directed to terminate this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 24, 2023**

UNITED STATES MAGISTRATE JUDGE